IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MKA EXCHANGE POWELL, LLC and KT POWELL, LLLP, | )<br>)<br>) |
| Plaintiffs, | )  NO. 3:23-cv-00423<br>) |
| v. | )  JUDGE RICHARDSON<br>) |
| FIRST AMERICAN TITLE INSURANCE COMPANY, | )<br>)<br>) |
| Defendant. | ) |

# MEMORANDUM OPINION

Plaintiffs MKA Exchange Powell, LLC ("MKA") and KT Powell, LLLP, ("KT") (collectively, "Plaintiffs") initiated this lawsuit by filing a complaint (Doc. No. 1, "Complaint") on April 27, 2023. On June 6, 2023, Defendant First American Title Insurance Company ("Defendant") filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 10). Shortly thereafter, Plaintiffs filed their "First Amended Complaint" (Doc. No. 12, "FAC"), which is the operative complaint in this case. Attached to the FAC were several documents, including the title insurance policy ("Policy") relevant to this dispute (Doc. No. 12-1) and the land survey contract (Doc. No. 12-3, "Survey Contract") that Plaintiffs entered into with a land surveying firm, Estes Russell Engineering, Inc. ("Estes Russell").

Now pending before the Court is Defendant's "Motion to Dismiss" (Doc. No. 16, "Motion") seeking to dismiss this action under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The Motion is supported by a memorandum of law (Doc. No. 17, "Memorandum"). Plaintiffs filed a response (Doc. No. 19, "Response") in opposition to the Motion, to which Defendant filed a reply. (Doc. No. 21, "Reply").

For the reasons stated herein, the Motion is DENIED.

BACKGROUND[1]

MKA is a Tennessee-based limited liability company with its principal place of business in Winter Park, Florida.[2] (Doc. No. 12 at ¶ 1).[3] Its sole member is Chad Hagle ("Mr. Hagle"). (*Id*. a ¶ 1). KT is a Florida-based limited liability limited partnership, whose sole general partner is KT Powell, Inc. ("KT, Inc.") and sole limited partner is W. Ed Moss Jr. ("Mr. Moss"), in his capacity as Trustee of the Hagle Family Descendants 2012 Irrevocable Trust ("the Trust"). (*Id*. at ¶ 3).

To pursue a commercial property development in Powell, Tennessee, Mr. Hagle formed a new company named AVE Powell LLC ("AVE Powell"). (*Id*. at ¶ 8). In May 2022, MKA and Mr. Moss, acting as Trustee of the Trust, acquired property at 7530 Thunder Lane, Powell, TN 37849 ("Property"[4]) and contracted with AVE Powell to develop it.[5] (*Id*. at ¶ 9).

---

[1] The facts herein are taken from the FAC, which is the operative complaint in this case, and the exhibits attached thereto (Doc. Nos. 12-1, 12-2, 12-3). For purposes of the instant Motion, the facts in the FAC are accepted as true, except to the extent that they are qualified herein (as, for example, by "Plaintiffs allege") to denote that they are not being taken as true but instead are set forth merely to make clear what a party claims to be true. Throughout this opinion, the Court forgoes any such qualifiers for any fact that it is accepting as true, stating those facts without qualification even though it is aware that any such (alleged) fact ultimately might not prove to be true.

[2] It appears that at some point between the acquisition of the property at issue and Plaintiffs' filing of the Complaint, MKA changed its state of incorporation from New Mexico to Tennessee. For purposes of diversity of citizenship, MKA is a citizen of Tennessee. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) ("It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'" (quoting *Mollan v. Torrance*, 22 U.S. 537, 539 (1824))).

[3] When citing a page in a document filed by one of the parties, the Court endeavors to cite to the page number ("Page __ of __") added as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document. When citing the FAC, however, the Court cites paragraphs, rather than page numbers, of the FAC.

[4] In the Policy, the Property is referred to as the "Land." Herein, the Court uses "Land" and "Property" interchangeably to refer to the property located at 7530 Thunder Lane, Powell, TN 37849.

[5] Sometime between the acquisition of the Property and Plaintiffs' filing of the Complaint, the address of the Property changed from 630 Delozier Way, Powell, TN 37849 to 7530 Thunder Lane, Powell, TN 37849. For the purposes of the instant Motion, the Property's address will be that used by Plaintiffs in the FAC and

On May 9, 2022, Mr. Moss (acting as Trustee) and MKA acquired from Defendant a title insurance policy (the aforementioned "Policy") insuring the Property.[6] (Doc. No. 12-1). In relevant part, the Policy insured Plaintiffs against loss from "[a]ny encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete survey of the Land." (Doc. No. 12 at ¶ 18 (quoting Doc. No. 12-1 at 1)). Notably, the phrase "accurate and complete survey of the Land" is not defined in the Policy.

In conjunction with their purchase of the Property, Plaintiffs employed Estes Russell[7] to conduct a survey ("the Survey") of the Property that complied with the minimum standard requirements of an American Land Title Association/National Society of Professional Surveyors ("ALTA/NSPS") survey.[8] (Doc. No. 12 at ¶ 14; Doc. No. 12-3 at 2). Via the Survey Contract, Plaintiffs requested to add to the Survey several optional services (i.e., services that are offered by Estes Russell but not necessary to comply with the minimum standard requirements for an ALTA/NSPS survey). One such optional (i.e., additional) service requested by Plaintiffs required

---

referred to by Defendant in an email attached to the FAC (Doc. No. 12-2), i.e., 7530 Thunder Lane, Powell, TN 37849.

[6] As the FAC puts it, the Trust—presumably through Mr. Moss, acting as its Trustee—transferred its interest in the Property to KT in July and allege that KT is an Insured under the Policy. (Doc. No. 12 at ¶ 10). For this reason, MKA's co-Plaintiff (i.e., MKA's co-insured under the Policy) is KT.

[7] Defendant did not provide a selection of surveyors for Plaintiffs to choose from to conduct the Survey. However, the state of Tennessee requires that land surveyors (1) pass an examination administered by the National Council of Examiners for Engineering and Surveying (NCEES) that is "designed to test the applicant's knowledge of land surveying and to ascertain if his or her judgment, experience, and technical knowledge are sufficient to safeguard life, health, and property," and (2) register with the state of Tennessee. Tenn. Comp. R. & Regs. 0820-01-.04 (1974); Tenn. Code Ann. § 62-18-101 (1969). Plaintiffs do not dispute that Estes Russell was a registered surveyor at all times relevant to this case.

[8] Although there is no indication from the Policy, the Complaint (or the parties' briefing, for that matter) that Plaintiffs and Defendant ever explicitly agreed that Estes Russell would fully comply with ALTA/NSPS standards, the Policy contemplates that the Survey would comply with these standards. (Doc. 12-1 at 1) ("Any facts, rights, interests or claims that may exist or arise by reason of the following matters disclosed by an ALTA/NSPS Survey made by Estes Russell Engineering, Inc. . . . .").

Estes Russell to indicate "[e]vidence of underground utilities existing on or serving the surveyed property . . . as determined by:" (a) plans or reports obtained by the engineer and (b) markings identified by a private utility locate request.[9] (Doc. No. 12-3 at 16). With respect to this additional service, the Survey Contract stated:

> However, lacking excavation, the exact location of underground features cannot be accurately, completely, and reliably depicted. In addition, in some jurisdictions, 811 or other similar utility locate requests from surveyors may be ignored or result in an incomplete response, in which case the surveyor shall note on the plat or map how this affected the surveyor's assessment of the location of the utilities. Where additional or more detailed information is required, the client is advised that excavation may be necessary.

(*Id*.).

The Survey was completed on November 16, 2021.[10] (Doc. No. 12 at ¶ 14). In conducting the Survey, Estes Russell did not find any indication of underground utility lines.[11] (Doc. No. 17-1).[12] Relying on the results of the Survey, Plaintiffs purchased and began

---

[9] A private utility locate request is a request to a utility company to identify and mark the location of any privately-owned underground utilities.

[10] Both the FAC and the Survey Notes (Doc. No. 17-1, "Survey Notes") indicate the Survey (or at least the fieldwork necessary for the Survey) was completed on November 16, 2021 (Doc. Nos. 12 at ¶ 14, 17-1), while the Policy indicates the Survey *would be* completed on December 22, 2021. (Doc. No. 12 at ¶ 30). For the purposes of the instant Motion, the Court accepts as true that the Survey actually occurred on November 16, 2021, despite the Policy stating that it was to occur on a later date.

[11] Specifically, the Survey Notes stated, "[t]his surveyor did not physically locate any underground utilities shown on the face of this drawing. Underground utility locations shown were derived from above ground markings and other physical evidence. This surveyor makes no guarantee as to the size and type of utility reported, or that all such utilities as may exist have been shown. The Tennessee One Call System was contacted and marked said utilities as per ticket #212581322." (Doc. No. 17-1).

[12] On a motion to dismiss, a court may consider documents which the defendant attaches to its motion "if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner v. Klais & Co*., 108 F.3d 86, 89 (6th Cir. 1997). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id*. The Survey Notes document, which is attached to the Motion but not the FAC, is referred to in the FAC and central to the FAC because Estes Russell's failure to discover an underground gas line is the entire basis for Plaintiffs' breach-of-contract claim. Moreover, Plaintiffs have not disputed that the Survey Notes document is, in fact, central to their FAC.

developing the Property in 2021. (Doc. No. 12 at ¶¶ 11, 15). On October 10, 2022, Plaintiffs were notified that a subcontractor had discovered an approximately four-inch wide, below-grade natural gas line ("gas line") that was not recorded in an easement in the Knox County Clerk's records. (*Id*. at ¶¶ 11, 12, 20). Plaintiffs incurred expense in relocating a portion of the gas line so the project could proceed. (*Id*. at ¶ 21). Plaintiffs sent notice to Defendant of the gas line on October 14, 2022, and notice was received by Defendant on October 17, 2022. (*Id*. at ¶ 19).

Plaintiffs filed an insurance claim asserting that the discovered gas line constituted an encumbrance to the Land and therefore was a covered risk under the Policy. (*Id*. at ¶ 18–20). Defendant responded to Plaintiffs' claim on March 3, 2023 in an email to Jason Williams, an attorney for Shutts & Bowen LLP.[13] In the email,[14] Defendant stated the following: (1) when discovered, the gas line was approximately five feet below existing grade, (2) since the gas line was not located within an easement, the local utility company offered to relocate part of the gas line, (3) to prevent a development pause, Plaintiffs paid the utility company $6,400.00 to relocate part of the gas line, and (4) despite the partial relocation, part of the gas line still remained beneath the Property. (Doc. No. 12-2).

In the email, Defendant also stated the following as grounds for denying Plaintiffs' insurance claim: (1) the Policy covered Plaintiffs against loss arising from an accurate and complete land survey, (2) a gas line which lacked a recorded easement would not be disclosed in

---

[13] Plaintiffs do not specify in any fashion their relationship to Mr. Williams. For purposes of the instant Motion, the Court surmises that at that time, Mr. Williams represented Plaintiffs as counsel.

[14] Plaintiffs did not attach to the FAC the insurance claim they submitted in relation to their discovery of the gas line. However, the insurance claim is referenced as Claim Number TN-2209204501 in an email (which is attached to the FAC at Doc. No. 12-2) from Mr. Williams to Plaintiffs.

an accurate and complete land survey, (3) the Survey explicitly disclaimed identification of underground utilities outside of recorded easements, and (4) since the Survey did not uncover the gas line's location and made no further guarantees about utilities, Plaintiffs' claim is not covered under the Policy.[15] (*Id*.).

Plaintiffs allege that their insurance claim is covered by the Policy because an accurate and complete land survey would have revealed the gas line. (Doc. No. 12 at ¶ 24). This is true (according to Plaintiffs) because "markings [of underground utilities] coordinated by the surveyor pursuant to a private utility locate request" would necessarily include the underground gas line. (Doc. Nos. 12 at ¶ 25, 12-3 at 16). Plaintiffs allege that the Survey did not uncover the gas line because either (1) the surveyor failed to hire a qualified utility locate company or, (2) the utility locate company failed to properly mark the gas line. (Doc. No. 12 at ¶ 26). Either way, Plaintiffs argue, this failure constitutes an "inaccurate and incomplete" survey resulting in a defect in Plaintiffs' title. (*Id*.).

The FAC alleges that Defendant breached the insurance Policy by "den[ying] the Plaintiffs' claim and refus[ing] to cover their damages arising therefrom . . . ." (*Id*. at ¶ 31). Plaintiffs seek compensatory damages for Defendant's alleged breach of contract, as well as attorney's fees, prejudgment interest, and the costs of the action. (*Id*. at ¶ 32).

---

[15] Plaintiffs have not stipulated to these facts. For purposes of ruling on the instant Motion, the Court accepts as true that these assertions are the purported basis on which Defendant denied Plaintiffs' insurance claim. The Court does not, however, accept these assertions as true in their own right. So, for example, while the Court does not accept as true the statement that a gas line which lacked a recorded easement would not be disclosed in an accurate and complete land survey, the Court does accept as true that Defendant informed Plaintiffs that this statement reflects Defendant's position and forms the basis for the denial of Plaintiffs' insurance claim.

## LEGAL STANDARD

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 167 L.Ed.2d 929 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680,. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id.* at 681. The question is whether the remaining allegations—factual

allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment.[16] *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652–53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791–92 (M.D. Tenn. 2018).

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

## DISCUSSION

A. <u>Insurance contracts, generally</u>

This Court has jurisdiction over this insurance coverage dispute based on diversity jurisdiction. Under the so-called *Erie* doctrine, a federal court sitting in diversity applies the substantive law of the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78

---

[16] As noted above, the Court will consider the Survey Notes based on this rule.

(1938) (holding that a federal court sitting in diversity is bound to follow the law of the forum state); *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) *(citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Tennessee state law therefore governs with respect to contract issues.

Under Tennessee law, "[a]n insurance policy is a contract, and as such, [the court's] analysis must be grounded in principles of contract law." *Christenberry v. Tipton*, 160 S.W.3d 487, 492 (Tenn. 2005). In a breach of contract action, the plaintiff bears the burden of proving "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract." *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006) (citations omitted). "[T]itle insurance policies are interpreted under the same rules of construction applicable to other contracts." *Wolf v. Clack*, No. E2009–01126–COA–R3–CV, 2009 WL 5173715 at *4 (Tenn. Ct. App. Dec. 30, 2009) (citations omitted). "The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Id.* (internal quotation marks omitted) (quoting *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975)). "The policy should be construed 'as a whole in a reasonable and logical manner,' . . . and the language in dispute should be examined in the context of the entire agreement." *S. Tr. Ins. Co. v. Phillips*, 474 S.W.3d 660, 665 (Tenn. Ct. App. 2015) (quoting *Standard Fire Ins. Co. v. Chester-O'Donley & Assoc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998)); *Cocke Cnty. Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985)).

A policy of title insurance is a "contract of indemnity under which the insurer for a valuable consideration agrees to indemnify the insured in a specified amount against loss through defects of title to . . . realty in which the insured has an interest." *Wolf*, 2009 WL 5173715, at *5

(citing *Sandler v. New Jersey Realty Title Ins. Co.*, 178 A.2d 1 (1962)). "Like other policies of insurance, title policies are liberally construed against the insurer and in favor of the insured." *Id.* (citing *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*, 116 N.J. 517, 529 (1989)). "Notwithstanding that principle of construction, courts should not write for the insured a better policy of insurance than the one purchased." *Id.* (citing *Walker Rogge*, 116 N.J.at 529); *see also Griffin v. Shelter Mut. Ins. Co.*, 18 S.W.3d 195, 200 (Tenn. 2000) ("The courts, of course, are precluded from creating a new contract for the parties.") (citations omitted). A court has a duty to enforce insurance contracts according to their plain terms, as understood in their plain, ordinary, and popular sense. *Wolf*, 2009 WL 5173715, at *2.

The provision of the Policy at issue here is item 2(c) of the Covered Risks listed on the first page of the Policy ("Item 2(c)"). Item 2(c) makes a Covered Risk—i.e., presumptively (subject to any applicable coverage exclusion) insures Plaintiffs against loss or damage from— "any defect in or lien or encumbrance on the Title . . . [including] . . . any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete survey of the Land." (Doc. No. 12 at ¶ 18 (citing Doc. No. 12-1 at 1)). In its Memorandum, Defendant argues that Plaintiffs' claim must be dismissed because (according to Defendant) Plaintiffs cannot show that Defendant breached the Policy essentially since (again, according to Defendant) Item 2(c) simply does not apply to the situation alleged in the FAC. (Doc. No. 17 at 5–6). Defendant argues that since the gas line lacked a recorded easement, an "accurate and complete survey" would not disclose the existence of the gas line, and therefore the gas line is not a Covered Risk under Item 2(c). (Doc. No. 17 at 7). Furthermore, Defendant argues that the Survey Contract explicitly disclaimed that the Survey would show all underground utilities existing on the property. (Doc. No. 17 at 8). Defendant's gist here appears to be that the Survey

Contract itself suggests that the Survey is not expected to show all underground utilities, meaning (supposedly) that the Survey could be accurate and complete even if it left undisclosed underground utilities like the gas line.

Plaintiffs make two primary arguments in response to Defendant. First, Plaintiffs argue that Tennessee law precludes dismissal at this juncture because determining the meaning of an "accurate and complete survey" is a question of fact that requires proof. (Doc. No. 19 at 8). Second, Plaintiffs contend that Item 2(c) covers defects that would have been disclosed by an "accurate and complete Land survey," not just defects that were in fact disclosed by the Survey performed by Estes Russell (which, Plaintiffs contend, was neither "accurate" nor "complete"). So, according to Plaintiffs, the mere fact that Estes Russell's survey (i.e., the Survey) would not have revealed (and, in fact, did not reveal) the gas line does not mean that an objectively accurate and complete survey would not have revealed it. (*Id*. at 10). The Court addresses below the sufficiency of Plaintiff's allegations, in light of these arguments.

B. <u>The fact that the gas line was not recorded within an easement does not warrant dismissal</u>.

Defendant first argues that the underground gas line would not be disclosed by an accurate and complete survey because it was not memorialized by a record easement. (Doc. No. 17 at 7). But as Plaintiff points out, the fact that the gas line was not recorded within an easement in the public records does not mean that an accurate and complete land survey would not have revealed the gas line. One important reason that a prospective landowner might employ a licensed land surveyor to conduct a survey is to locate encumbrances that cannot be located by a public record search; at this stage, the Court cannot say that that a survey would be accurate and complete if it did not locate such encumbrances. Therefore, Defendant's first argument is insufficient to warrant dismissal.

C. <u>Whether the Survey was "accurate and complete" is a question of fact</u>.

Defendant next urges the Court to decide, as a matter of law, whether an "accurate and complete Land survey" would reveal the existence of the underground gas line. Defendant asserts that as a matter of law, an "accurate and complete Land survey" would not reveal the existence of the underground gas line because the Survey Contract explicitly disclaimed that the Survey would show all underground utilities existing on the property. (Doc. No. 17 at 8). But in making this argument, Defendant runs into several obstacles.

First, Defendant relies on the Survey Contract and Survey Notes (as opposed to the Policy) to reveal as a matter of law what an "accurate and complete Land survey," *within the meaning in the Policy*, would (and would not) reveal. For example, Defendant points to language in the Survey Contract stating that the Survey would identify "evidence of underground utilities existing on or serving the property" but that "lacking excavation, the exact location of underground features cannot be accurately, completely, and reliably depicted." (Doc. 12-3 at 16). However, the *Policy* does not explicitly incorporate the terms of the Survey Contract, and Defendant offers no argument as to why the Court should read the Policy as doing so. In light of the fact that the Policy does not incorporate the Survey Contract, the Court is disinclined to rely on the terms of the Survey Contract to determine what an "accurate and complete Land survey," as that phrase is used in the Policy, would reveal. The Court sees little reason to conclude that what constitutes an "accurate and complete Land survey" as used in the Policy means only what Estes Russell describes in the Survey Contract as the criteria required for a "complete 2021 ALTA/NSPS Land Title Survey." (Doc. No. 12-3 at 7). Without something tying the meaning of an "accurate and complete Land survey" in the *Policy* to the criteria outlined in the Survey Contract, the fact that the Survey complied with the requirements of the Survey Contract has no bearing on whether the Survey would qualify as

an "accurate and complete Land survey" under the terms of the *Policy*. Put another way, the specific requirements stated in the Survey Contract as being necessary for a "complete 2021 ALTA/NSPS Land Title Survey" do not necessarily align with what is required for an "accurate and complete Land survey" under the terms of the Policy.

Additionally, even if the Court were otherwise inclined to decide, as a matter of law, whether an "accurate and complete Land survey" would have revealed the existence of the underground gas line, the Court still would decline to do so because the Tennessee Supreme Court has held that whether an accurate survey would have revealed an easement is a question of fact. *Allpress v. Laws. Title Ins. Corp.*, 405 S.W.2d 572, 573–74 (Tenn. 1966). The dispute in *Allpress* involved a title insurance claim over a prospective easement on the property at issue. *Id.* at 572. The title policy contained an exception stating that it did not cover defects, which an accurate survey would have disclosed. After the Chancery Court dismissed the complaint on the grounds that the policy did not cover loss from defects that an accurate survey would have disclosed, the Tennessee Supreme Court reversed, holding that the plaintiff's claim was improperly dismissed because a factual issue existed as to whether an accurate survey would have revealed the existence of an easement. *See id.* at 572–74. According to the Tennessee Supreme Court, that factual issue precluded dismissal. *See id.* at 573–74.

Plaintiffs contend that, like the issue in *Allpress*, the issue of what constitutes an "accurate and complete Land survey" (and specifically, whether an "accurate and complete Land survey" means one that necessarily would have revealed the gas line) is a factual issue that precludes dismissal at this stage. The Court agrees, finding *Allpress* applicable even though it concerned the meaning of "accurate" while the instant issue concerns the meaning of "accurate and complete."

Defendant does not even address *Allpress* in its Reply, much less attempt to distinguish it[17] or explain why the holding therein does not remain good law or somehow is not binding on this Court (for example, on the grounds that *Allpress* actually expresses a mere procedural rule that this Court is not bound to follow under the *Erie* doctrine). Rather, Defendant insists that the issue in this case is one presenting a legal question regarding the extent of coverage under the Policy—specifically "whether an underground gas line only discoverable through excavation is a Covered Risk under the Policy." (Doc. No. 21 at 1). But in its attempt to reframe the issue as a legal one, Defendant mischaracterizes the facts that the Court must accept as true for purposes of deciding the instant Motion.

Specifically, Defendant assumes that the gas line at issue was discoverable only through excavation. Although Plaintiffs have conceded that the gas line was eventually discovered by excavation, this is not an admission that the gas line was *discoverable only by* excavation. To the contrary, Plaintiffs' theory of liability contemplates that the gas line could have been discovered if Estes Russell (or any other surveyor) had conducted an "accurate and complete land survey"—meaning a survey that is not merely compliant with the terms in the Survey Contract, but "accurate" and "complete" as those terms are properly construed as used in Item 2(c) in particular. This theory presents an issue that, under *Allpress*, the Court must treat as a factual one that currently remains unresolved—not a legal one that the Court can resolve now.

---

[17] For example, Defendant also does nothing to establish that the allegations of the Complaint (as construed in light of its attachments and the Survey Notes) somehow eliminated any factual issue as to the meaning of "accurate and complete" under the Policy in a way that the complaint in *Allpress* did not eliminate any factual issue as to the meaning of "accurate" under the Policy there at issue.

Because it is bound by the holding in *Allpress*, the Court may not decide as a matter of law at this juncture whether (or that) an "accurate and complete Land survey" would have revealed the gas line.[18]

CONCLUSION

For the reasons stated herein, the Motion at Doc. No. 17 is DENIED.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[18] Even if the Court were to decide as a matter of law (based on the terms of the Survey Contract) whether an "accurate and complete Land survey" would have revealed the gas line, the language in the Survey Contract disclaims only the "*exact location*" of underground encumbrances, not their existence, without excavation. (Doc. No. 12-3 at 16 ("[L]acking excavation, the exact location of underground features cannot be accurately, completely, and reliably depicted.")). Defendant relies also on the Survey Notes which explicitly disclaimed that "[Estes Russell] makes no guarantee . . . that all such utilities as may exist have been shown." (Doc. 17 at 2–3). However, the fact that the Survey Notes purported to make a disclaimer regarding the Survey's disclosure of underground utilities—thus arguably implying that the Survey was complete as a whole even if it was not necessarily complete in its disclosure of underground utilities—does not mean that the Survey comprised an "accurate and complete Land survey" within the meaning of an insurance policy issued prior to the completion of the Survey (and the Survey Notes generated from that Survey).