UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MKA EXCHANGE POWELL LLC et al., | |
| Plaintiffs, | Case No. 3:23-cv-00423 |
| v. | Judge Eli J. Richardson |
| | Magistrate Judge Alistair E. Newbern |
| FIRST AMERICAN TITLE INSURANCE COMPANY, | |
| Defendant. | |

## <u>MEMORANDUM ORDER</u>

This action arises out of an insurance coverage dispute concerning a commercial property development in Powell, Tennessee. (Doc. No. 12.) Plaintiff MKA Exchange Powell, LLC (MKA), Plaintiff KT Powell, LLLP (KT), and nonparty W. Ed Moss, in his capacity as Trustee of the Hagle Family 2012 Descendants Trust (the Trust), have filed a motion for leave to substitute Moss as a plaintiff for KT in this action. (Doc. No. 32.) Defendant First American Title Insurance Company (First American) opposes the motion to substitute (Doc. Nos. 34, 35), and MKA, KT, and Moss have filed a reply (Doc. No. 38). For the reasons that follow, the Court will allow the substitution.

### I.        Relevant Background

The District Judge described the relevant factual allegations underlying this action in a memorandum opinion denying First American's motion to dismiss the first amended complaint. (Doc. No. 27.) This Memorandum Order will summarize the facts relevant to the motion to substitute. MKA is a Tennessee-based limited liability company with a principal place of business in Winter Park, Florida. (*Id.*) MKA's sole member is Chad Hagle. (*Id.*) KT is a Florida-based

limited liability limited partnership with one general partner, KT Powell, Inc. (KT, Inc.), and one limited partner, Moss in his capacity as trustee. (*Id.*)

In May 2022, MKA and Moss, acting as trustee, acquired the property at 7530 Thunder Lane, Powell, Tennessee 37849 (the property) and contracted with a new company formed by Hagle to develop it. (*Id.*) Before purchasing the property, MKA and the Trust paid a surveying company to survey the property. (*Id.*) The completed survey "did not find any indication of underground utility lines." (*Id.* at PageID# 219.) On May 9, 2022, MKA and Moss, in his capacity as trustee, acquired an insurance policy from First American for the property. (*Id.*) Among other things, the policy insures MKA and the Trust "against loss from '[a]ny encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete survey of the Land.'" (*Id.* at PageID# 218 (quoting Doc. No. 12, PageID# 55–56, ¶ 18).) The policy does not define "the phrase 'accurate and complete survey of the Land[.]'" (*Id.* at PageID# 218.) The policy also includes a "continuation of insurance" clause providing that:

> The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

(Doc. No. 12-1, PageID# 62, ¶ 2.) The Trust, acting through Moss, transferred its interest in the property to KT in July 2022. (Doc. No. 27.)

During development, "a subcontractor [ ] discovered an approximately four-inch wide, below-grade natural gas line . . . that was not recorded in an easement in the Knox County Clerk's records[,]" and MKA and KT "incurred expense in relocating a portion of the gas line so the project

could proceed." (*Id.* at PageID# 220.) MKA and KT "filed an insurance claim asserting that the discovered gas line constituted an encumbrance to the Land and therefore was a covered risk under the Policy[,]" but First American denied the claim. (*Id.*)

MKA and KT initiated this action on April 27, 2023 (Doc. No. 1), and filed an amended complaint as a matter of course on June 17, 2023 (Doc. No. 12).[1] MKA and KT assert that First American "breached the insurance Policy by 'den[ying] the Plaintiffs' claim and refus[ing] to cover their damages arising therefrom . . . .'" (Doc. No. 27, PageID# 221 (alterations in original) (quoting Doc. No. 12, PageID# 58, ¶ 31).) The first amended complaint seeks compensatory damages, attorney's fees, and costs. (Doc. No. 12.)

First American moved to dismiss the first amended complaint under Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 16) arguing that MKA and KT's breach-of-contract claim failed as a matter of law because "the express terms of the . . . Policy[ ] do not provide insurance coverage for the facts alleged in the [amended] [c]omplaint" (Doc. No. 17, PageID# 111). The Court denied First American's motion to dismiss, finding that determining whether First American breached the policy involved resolving questions of fact that were not appropriately addressed via a Rule 12(b)(6) motion. (Doc. No. 27.)

While its motion to dismiss the first amended complaint was pending, First American filed a motion for summary judgment. (Doc. No. 24.) First American argues that it is entitled to summary judgment because there is no genuine dispute of material fact that it did not breach the insurance policy and, moreover, that KT cannot maintain a breach-of-contract claim against it

---

[1]    First American filed a motion to dismiss the original complaint on June 6, 2023 (Doc. No. 10), and MKA and KT filed an amended complaint under Rule 15(a)(1)(B) on June 17, 2023 (Doc. No. 12).

because KT is not an insured under the policy. (Doc. No. 25.) MKA and KT responded in opposition (Doc. Nos. 29, 31), and First American filed a reply (Doc. No. 36).

Shortly after MKA and KT filed their response in opposition to First American's summary judgment motion, MKA, KT, and Moss filed a motion for leave to file a second amended complaint substituting Moss, in his capacity as trustee, as a plaintiff in place of KT. (Doc. No. 32.) MKA, KT, and Moss argue that First American's "argument that [KT] does not qualify as an 'insured' constitutes an objection that it is not the real party in interest under Federal Rule of Civil Procedure 17." (*Id.* at PageID# 302, ¶ 2.) They argue that substituting Moss for KT under Rule 17 is appropriate because they "mistakenly nam[ed] KT [ ], rather than its majority owner, as [a] [p]laintiff"; they "moved for substitution promptly following [First American's] assertion of the [ ] defense"; and there is no risk of prejudice to First American "because the parties have not conducted depositions, and the material factual allegations remain unchanged." (*Id.* at PageID# 303–04, ¶¶ 6, 7.)

First American opposes the motion to substitute, arguing that Moss also is not a real party in interest because, under the policy, "insurance no longer continues in favor of the Trustee after it quitclaimed all of its interest in the Property" to KT. (Doc. No. 35, PageID# 342.) First American argues that "[s]ubstituting the Trustee as a party [p]laintiff for KT [ ] would be futile[ ] because it is undisputed that KT [ ] is not an Insured and indisputable the Trustee can no longer claim under the Policy." (*Id.* at PageID# 342–43.) Alternatively, First American argues that, "[e]ven if [Moss] were the real party in interest, any mistake in not naming the Trustee is not understandable and thus, curable by substitution under Rule 17, because the Trustee has held an interest in the Property prior to this suit and the notice of claim." (*Id.* at PageID# 343.)

MKA, KT, and Moss reply that, under the policy's terms and Tennessee law, the Trust "remains a covered insured because [it] retains an interest in the Property through [its] interest in KT [ ]." (Doc. No. 38, PageID# 356, ¶ 2.) MKA, KT, and Moss further argue that First American waived its real-party-in-interest objection by failing to "raise the issue in either of its first two dispositive motions[.]" (*Id.* at PageID# 359, ¶ 10.)

## II.     Legal Standard

The Federal Rules of Civil Procedure require that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). However, under Rule 17(a)(3), a "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). The advisory committee notes to Rule 17 explain that this provision was "added simply in the interests of justice":

> In its origin the rule concerning the real party in interest was permissive in purpose: it was designed to allow an assignee to sue in his own name. That having been accomplished, the modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.
>
> This provision keeps pace with the law as it is actually developing. Modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed--in both maritime and nonmaritime cases. *See Levinson v. Deupree*, 345 U.S. 648 (1953); *Link Aviation, Inc. v. Downs*, 325 F.2d 613 (D.C. Cir. 1963). The provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made.

Fed. R. Civ. P. 17 advisory committee's note to 1966 amendment; *see also Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 532 (6th Cir. 2002) (quoting *id.*).

In deciding a motion to substitute under Rule 17(a)(3), "'the Court considers whether there has been an honest mistake as opposed to tactical maneuvering, unreasonable delay, or undue

prejudice to the non-moving party.'" *Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593, 615 (W.D. Tenn. 2011) (quoting *Tool-Plas Sys., Inc. v. Camaco, LLC*, No. 09-12003, 2010 WL 1347686, at *2 (E.D. Mich. Mar. 31, 2010)); *see also Zurich Ins. Co.*, 297 F.3d at 534 (Gilman, J., concurring) (factors courts should consider under Rule 17(a) include "[a] plaintiff's vigilance" and "a lack of prejudice to the opposing party"). Courts in this circuit recognize that "[a] Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." *Zurich Ins. Co.* 297 F.3d at 534 (Gilman, J., concurring) (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997)); *see also Wright*, 782 F. Supp. 2d at 615 (quoting *id.*); *cf. Hilgraeve Corp. v. Symantec Corp.*, 212 F.R.D. 345, 347 (E.D. Mich. 2003) ("Although the district court retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of an incorrect party, there plainly should be no dismissal where 'substitution of the real party in interest is necessary to avoid injustice.'" (quoting *Advanced Magnetics, Inc.*, 106 F.3d at 20)).

## III.     Analysis

First American's primary argument in opposition to allowing substitution is that Moss is no longer a real party in interest because he transferred the Trust's interest in the property to KT. (Doc. No. 34.) As MKA, KT, and Moss point out, First American's argument is premised upon resolution of the parties' competing interpretations of the policy's coverage provisions in its favor. But the question of the policy's coverage is central to the summary judgment motion pending before the District Judge and is better resolved in that context. *C.f. Durthaler v. Accts. Receivable Mgmt., Inc.*, No. 2:10–cv–1068, 2011 WL 5008552, at *4 (S.D. Ohio Oct. 20, 2011) (finding that, where the same legal issue appears before a district judge and magistrate judge in different procedural postures "it is usually a sound exercise of discretion to permit the claim to be pleaded

and to allow the merits of the claim to be bested before the District Judge by way of a [dispositive motion]").

As to the other factors relevant to a Rule 17 analysis, First American has not argued that it would be unduly prejudiced by the substitution. And, despite First American's cursory argument that the plaintiffs' mistake was not understandable, there is no indication of tactical maneuvering or undue delay by MKA, KT, and Moss in seeking substitution. Further, First American has not challenged MKA, KT, and Moss's assertion that "the material factual allegations remain unchanged" notwithstanding the substitution. (Doc. No. 32, PageID# 304, ¶ 6.)

The Court will therefore allow the substitution. *See Zurich Ins. Co.*, 297 F.3d at 534 (Gilman, J., concurring); *Wright*, 782 F. Supp. 2d at 615.

## IV. Conclusion

For these reasons, MKA, KT, and Moss's motion for leave to file a second amended complaint substituting Moss in his capacity as trustee for KT as a plaintiff (Doc. No. 32) is GRANTED. The Clerk of Court is DIRECTED to file the second amended complaint (Doc. No. 32-1) as a separate docket entry.

It is so ORDERED.

ALISTAIR E. NEWBERN
United States Magistrate Judge

7